# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

ANTONIO RAYSHAWN YOUNGBLOOD,

    Plaintiff,

    v.

INVESTIGATOR JEFF WILLIAMS,
GLYNN COUNTY POLICE OFFICER,

    Defendant.

No: 2:16-CV-118

## ORDER

Pending before the Court is Defendant Jeff Williams' ("Defendant") Motion for Summary Judgment (Dkt. No. 21). The motion has been fully briefed and is now ripe for decision. For the reasons stated below, the Defendant's Motion (Dkt. No. 21) is **GRANTED**.

## FACTUAL BACKGROUND

This action arises from the alleged excessive force used by Defendant in apprehending Plaintiff. On January 1, 2016, the theft of a Sony Playstation 4 ("Playstation") was reported to the Glynn County Police Department. Dkt. No. 21-4 p. 25:21-24. During their investigation of the theft, Glynn County Police Investigators identified Plaintiff as having put that same

Playstation up for sale on Facebook. Id. The investigators sent a message to Plaintiff to arrange for purchase of the Playstation 4. Id. On January 2, 2016, Plaintiff agreed to meet Defendant and other investigators at a nearby gas station. Dkt. No. 21-5 p. 24:18-20. Defendant and another investigator waited at the gas station for Plaintiff. After a few minutes, Plaintiff arrived with the Playstation. Id. 25:2-4. The Playstation was verified as the one that had been reported stolen—easily identified by the custom artwork on its outer cover. Dkt. No. 21-4 p. 26:12-22.

Defendant identified himself as a Glynn County Police officer and informed Plaintiff that he was under arrest for receiving stolen property. Id. p. 33:6-12. As a third investigator arrived at the parking lot, Plaintiff took off running. Dkt. No. 21-5 p. 25:7-10. Defendant shows that the attempt to evade arrest constituted obstruction of law enforcement officers. O.C.G.A. § 16-10-24; Dkt. No. 21-2 p. 6. Defendant chased after Plaintiff, ordering him to stop. Dkt. No. 21-4 p. 33:6-12. Plaintiff did not stop; instead, he raced to a nearby alleyway, with Defendant in pursuit. Id. p. 34:10-15. Defendant yelled "taser" and fired a handheld tasing device, striking Plaintiff with two electrified barbs: the first in the back, the other in the head. Id. p. 35:4-15. Plaintiff collapsed to the ground, injuring his face on the pavement. Dkt.

No. 21 p. 3. ¶¶ 17-18. Plaintiff was immediately arrested and given medical treatment. Id. p. 3 ¶ 21.

Plaintiff brings a 42 U.S.C. § 1983 ("Section 1983") claim for excessive force against Defendant, as well as state-law claims for aggravated assault and battery. Dkt. No. 1. Defendant now moves for summary judgment on all claims. Dkt. No. 21.

**LEGAL STANDARD**

The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion for summary judgment and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes demonstrate absence of any genuine issue of material fact. Taylor v. Espy, 816 F. Supp. 1553, 1556 (N.D. Ga. 1993) (citation omitted). If it shows that there is insufficient evidence supporting the nonmoving party's case, the moving party has satisfied its burden. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The burden then shifts to the nonmovant to demonstrate a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmovant may meet this burden by showing that the record contains "supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party."

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Alternatively, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. But should the nonmovant instead attempt to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

At the summary judgment stage, it is the Court's responsibility "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)) (internal quotation marks omitted). When, as here, the parties have filed cross-motions for summary judgment, the applicable Rule 56 standard is not affected. See Gerling Glob. Reinsurance Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233-34 (11th Cir. 2001). "[T]he facts are viewed in the light most favorable to the non-moving party on each motion." Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

**DISCUSSION**

Defendant asserts both that he is entitled to qualified immunity and that the amount of force used to subdue Plaintiff was reasonable given the circumstances. Dkt. No. 21. The Court addresses each assertion in turn.

**A. Plaintiff's 42 U.S.C. § 1983 Claims Do Not Succeed**

The qualified immunity defense offers "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When properly applied, the doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." Id. (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To qualify for protection via qualified immunity, a public official must prove that he was acting within the scope of his discretionary authority at the time the alleged wrongful acts occurred. Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012). In arguing that a public official acts within his "discretionary authority," that official must show "objective circumstances that would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and

within the scope of his authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)).

Effectuating an arrest is a discretionary act. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) (noting that an officer acts within his discretionary authority at the time of an arrest). Therefore, Defendant was acting within his discretionary authority by effectuating an arrest within the ambit of his employment. The burden thus shifts to the plaintiff to show that qualified immunity does not apply. Terrell, 668 F.3d at 1250.

To determine whether qualified immunity applies, a court engages in a two-step inquiry, assessing whether both (1) the facts establish that the officers violated a constitutional right and (2) the right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] A constitutional right is clearly established if "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). We

---

[1] Federal courts have discretion in deciding which prong to address first. See Pearson, 555 U.S. at 236.

6

therefore begin by analyzing whether Defendants violated Plaintiff's constitutional rights.

First, the Court notes that Plaintiff appears to make the argument that his arrest was made without probable cause. Dkt. No. 24-1 p. 3-5. Probable cause to arrest exists where the facts and circumstances "within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010). When determining whether an official is entitled to qualified immunity, however, the issue is not actual probable cause, but rather arguable probable cause. Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997). Arguable probable cause to arrest exists if objectively reasonable officers in the same circumstances and possessing the same knowledge as the officer effectuating the arrest could have believed that probable cause existed. Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009).

Here, Defendant initially arrested Plaintiff for receipt of stolen property under O.C.G.A. § 16-8-7. Under that statute, "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen

AO 72A
(Rev. 8/82)

property which he knows or should know was stolen . . ." O.C.G.A. § 16-8-7(a).

The undisputed facts set forth in the record indicate that Defendant had arguable probable cause to believe that Plaintiff had committed this offense. First, the Playstation in Plaintiff's possession was outfitted with the same "skin" as the one reported stolen. Dkt. No. 26:16-25. Defendant noted that this particular skin was "very identifiable."[2] And second, Defendant discovered the Playstation one day after it was reported stolen. Defendant was faced with a situation where a similar Playstation was discovered for sale close to the *place* of the burglary and close to the *date* of the burglary. Armed with these facts, Defendant had arguable probable cause to make an arrest. Having determined that Defendant had arguable probable cause to effectuate arrest, the Court determines that Plaintiff did not suffer a violation of his constitutional rights in relation to this claim. The Court turns to Plaintiff's second contention: that Defendant used excessive force by employing a taser.

Plaintiff next argues that Defendant used excessive force in effectuating his arrest by using a taser gun. Dkt. No. 24-1 p. 4. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of

---

[2] For reference, a Playstation "skin" is a type of silicon or plastic covering which comes in a wide range of colors and thousands of unique designs.

excessive force in the course of an arrest. See Graham v. Connor, 490 U.S. 386, 394-95 (1989). The Supreme Court has held that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985) (internal quotations omitted)). Moreover, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).

The Supreme Court has established that a court must evaluate a number of factors to determine excessive force, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

The crimes at issue are selling stolen property and obstruction of law enforcement officers. Here, both are misdemeanors. O.C.G.A § 16-10-24(a). The record is undisputed that the force used was a two-prong taser fired at Plaintiff's

back. It is also undisputed that Plaintiff attempted to evade arrest by running away after Defendant notified him that he was under arrest.

The Eleventh Circuit has held that tasing[3] may be appropriate even when the initial stop is for a traffic violation. Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004). In Draper, the plaintiff was stopped for a minor traffic violation. Id. The plaintiff made repeated outbursts and refused to cooperate with the officer. The defendant officer then used a taser a single time to subdue the plaintiff. Id. The court found that this was a reasonably proportionate amount of force given the circumstances. Id. at 1278.

The facts of this case are similar to those in Draper. In this case, Plaintiff was also detained with regard to an offense—though an offense more serious than the traffic violation in Draper. An identical amount of force was used in both cases—Plaintiff was struck with a taser a single time. And while Plaintiff did not repeatedly clash with officers as did the plaintiff in Draper, he also took action; he fled after being informed of his arrest. Attempting to flee does not allow officers to use excessive force, carte blanche. Garner, 471 U.S. 1. But an attempt to flee arrest is action that enhances

---

[3] The Court notes the difference between a taser and a "stun gun". A taser utilizes more force than a stun gun because it deploys two small prongs which puncture the skin. A stun gun does not deploy such prongs. The defendant in Draper, as is the case here, used a taser.

the amount of force an officer may use to subdue a plaintiff. Graham, 490 U.S. at 396.

Defendant had few, if any, reasonable alternatives to safely stop Plaintiff—and the situation was escalating quickly. Plaintiff turned to run as soon as he learned he was being placed under arrest. Dkt. No. 21-5 p. 25:7-10. Defendant is 30 years Plaintiff's senior and is not in exceptional physical condition. Dkt. No. 21-4 p. 34:1-8. And Plaintiff began to flee next to a major highway, before the officers had had an opportunity to check him for weapons, and after committing a second offense. Dkt. No. 21-2 p. 6. The situation was tense; the decision was split-second. The Court is mindful that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. Given the undisputed facts of this case, tasing a fleeing suspect a single time under the circumstances of this case does not clearly violate Plaintiff's Fourth Amendment rights against the use of excessive force.

Plaintiff relies on two cases to support his arguments that the amount and nature of force used was unconstitutional: Fils and Powell. Fils v. City of Aventura, 647 F.3d 1272, 1289 (11th

Cir. 2011); Powell v. Haddock, 366 Fed. Appx. 29 (11th Cir. 2010). Neither argument, however, carries the day.

First, Plaintiff notes that in Fils, the court explained that "resisting arrest without force does not connote a level of dangerousness that would justify a greater use of force. Fils, 647 F.3d at 1288. As such, Plaintiff argues, his misdemeanor obstruction of resisting arrest without the use of force did not justify greater use of force. But Plaintiff here is differently situated from the plaintiff in Fils. There, the Court proceeded to note that the plaintiff in that case "was not resisting arrest or attempting to escape," nor did that Plaintiff "present a threat" to the safety of the officers or the public around him. Id. at 1289. But because the Plaintiff in this case both resisted arrest and had not been checked for weapons, the officers' greater use of force is justified under the Graham factors. Graham, 490 U.S. at 396.

Second, Plaintiff notes that in Powell, the Court noted that a taser could not "constitutionally be used against a non-threatening suspect when the alleged crime is a minor offense." Powell, 366 Fed. Appx. at 29. But that citation is incomplete; immediately thereafter, the Court cited to Vineyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002), for its holding "that it violates the Fourth Amendment to use pepper spray on an individual suspected of resisting an officer *when that*

AO 72A
(Rev. 8/82)

*individual was not posing a threat.*) Powell, 366 Fed. Appx. at 31 (emphasis added). Here, Plaintiff fled from the officers before he had been checked for weapons, next to a major highway, and after committing a second offense. Dkt. No. 21-2 p. 6. It was reasonable under the circumstances for the officers to believe Plaintiff posed a threat to themselves or to the community. Moreover, the Plaintiff in Powell was not fleeing; the Plaintiff here was. Powell, 366 Fed. Appx. at 31. As such, Plaintiff's arguments are unpersuasive.

In sum, Defendant does not require qualified immunity because neither the arrest he effectuated nor the amount of force he used to stop Plaintiff from fleeing violated Plaintiff's constitutional rights.

In any event, even if the Court found that the amount of force used was unreasonable, qualified immunity would shield Defendant from liability. A government employee is entitled to a judgment of qualified immunity "unless the employee's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Morse v. Frederick, 551 U.S. 393, 429 (2007). But Draper confirms that Defendant's use of force was wholly lawful. Draper, 369 F.3d 1270 (2004). Defendant would therefore be entitled to qualified immunity on Plaintiff's claims under 42 U.S.C. § 1983. Rather than putting Defendant on notice that his actions would be

unconstitutional, caselaw tends to confirm the reasonableness of the actions.

The Court now turns to Plaintiff's state law claims.

**B. Defendant is Entitled to Official Immunity on Plaintiff's State Law Claims.**

The Court now addresses Plaintiff's assault and battery claims against Defendant. The undisputed facts show that Defendant is entitled to official immunity and therefore summary judgment will be granted. According to the Georgia Constitution, "state officers and employees and those of its departments and agencies are subject to suit only when they . . . act with actual malice or intent to cause injury in the performance of their 'official functions.'" Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994) (citing Ga. Const. art. I § 2 ¶ IX(d)). Actual malice requires intent to do harm. Merrow v. Hawkins, 467 S.E.2d 336, 337 (Ga. 1996). The intent necessary for a showing of actual malice "must be the intent to cause the harm suffered by the plaintiffs." Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007).

Plaintiff alleges that Defendant acted outside of his authority because Defendant attempted to make an arrest without probable cause. The undisputed facts show otherwise. Accordingly, the Court must reject Plaintiff's argument. Plaintiff also argues that Defendant otherwise acted with

AO 72A
(Rev. 8/82)

malice. The record contains no indicia of malice. Rather, the record reflects that Defendant tased Plaintiff a single time to stop him from evading arrest. Moreover, it is undisputed that once Plaintiff stopped fleeing, no further force was used.

Plaintiff appears to argue that any time an officer uses force to "apprehend," rather than uses force in "self-defense," an officer acts with malice. Dkt. No. No. 24-1 p. 11. This is not so. Georgia courts recognize that malice is more than mere "poor judgment, rude behavior, and reckless disregard for the rights and safety of others on the part of the officers." Selvy v. Morrison, 665 S.E.2d 401, 405 (Ga. Ct. App. 2008). Rather, Plaintiff must present evidence of "ill will" and "intent to injure" on the part of Defendant. He has failed to do so.

The record reflects that Defendant took action that respected Plaintiff's constitutional rights in making his arrest and preventing his escape, and that Defendant took no gratuitous actions indicating malice. The Court therefore grants Defendant summary judgment on all state-law and federal claims.

Plaintiff brought a claim for punitive damages under 42 U.S.C. § 1983. However, because all causes of action on which punitive damages could be sought have been dismissed, Plaintiff's claim for punitive damages must also be dismissed.


AO 72A
(Rev. 8/82)

15

## CONCLUSION

For the reasons set forth above, Defendant Jeff Williams' Motion for Summary Judgment (Dkt. No. 21) is hereby **GRANTED**.

**SO ORDERED**, this 25TH day of October, 2017.

HON. LISA GODBEY WOOD,
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA